UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JEFFREY LYNN YEARGIN,

       Plaintiff,                                  Case No. 12-cv-10355
                                                     HON. BERNARD A. FRIEDMAN
vs.

CHRYSLER GROUP, LLC,

       Defendant.
_____/


**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

**I.**      **Introduction and Facts**

      Jeffrey Yeargin ("plaintiff"), an African-American male, commenced this action against

Chrysler Group, LLC ("defendant") pursuant to Title VII of the Civil Rights Act of 1964,

alleging that defendant's employees discriminated against him on account of his race.  Plaintiff

also maintains that defendant's employees subjected him to a hostile work environment in

violation of the Elliott-Larsen Civil Rights Act ("ELCRA") and alleges state claims for

intentional infliction of emotional distress and negligent supervision.  Before the Court is

defendant's motion for summary judgment [docket entry 16].  Plaintiff filed a response [docket

entry 17] and defendant filed a reply [docket entry 19].  The Court will rule on defendant's

motion without oral argument pursuant to E.D. Mich. LR 7.1(f)(2).

      On May 7, 1996, plaintiff applied for employment with defendant as an electrician.  Def.

Exh. 2.  The application contained the following provision:

"In consideration of Chrysler's review of my application, I agree that any claim or lawsuit arising out of my employment with, or my application for employment with Chrysler Corporation or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit.  While I understand that the statute of limitations for claims arising out of my employment action may be longer than six (6) months, I agree to be bound by the six (6) month period of limitations set forth herein, and I WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY."

Id. (emphasis in original).  This clause was preceded by the bold and capitalized statement "READ CAREFULLY BEFORE SIGNING." Id. (emphasis in original).  Plaintiff signed the application attesting that he read and understood the application. Id.  Defendant hired plaintiff the following January and placed him at its stamping facility located in Sterling, Michigan. Def. Exh. 1 at 16.  Plaintiff enrolled as a member of the United Auto Workers (the "union") and served as a union appointed attendance counselor beginning in 2003. Id. at 87.  In this capacity, plaintiff advised hourly employees about performance issues related to their attendance and formulated strategies to increase individual employee productivity. Id. at 96-97.  Plaintiff continued in this position full-time until 2008, when he began working at least two days a week as an electrician and three days a week as a counselor. Id. at 115.  Although the union's collective bargaining agreement barred him from working overtime as a counselor, it afforded plaintiff the opportunity to accrue overtime in his role as an electrician Id. at 95.  Plaintiff maintained this hybrid schedule through 2010, when he claims to have become the target of racial discrimination and harassment.

On November 12, 2010, plaintiff walked down from his office in the stamping facility to the electrical in order to review the posted overtime eligibility list for the following week. Id. at 142.  While there, he approached his supervisor, Alan John Mattice ("Mattice"), when he noticed a rope dangling from the electrician's cart positioned behind Mattice. Id.  Plaintiff approached

-2-

the cart to further inspect the rope and saw that it had been tied in several knots to form a noose.
Id.  Having observed the noose as well, Mattice quickly summoned Cornelle Salagean
("Salagean"), the electrician who had been using the cart, ordered him to remove the noose and
asked him to identify the individual who had placed it there. Id. at 116, 143; Def. Exh. 4 at 2.
Salagean implicated another electrician assigned to the same cart, Jerome Rozewski
("Rozewski"). Def. Exh. 1 at 116; Exh. 4 at 2. Mattice reported the incident to George Rockwell
("Rockwell"), the plant labor relations supervisor, and informed Rockwell of his own suspicions
regarding Rozewski's involvement.  Mattice noted that "the noose was made from a rope that
[Rozewski] was using while on a job assignment and it was connected to the cart he was
assigned to that day." Exh. 4 at 3.  Moreover, Mattice believed that Rozewski had engaged in a
prior similar act of intimidation directed against him in 2006.  At that time, Mattice discovered a
"noose made out of nylon ribbon in the electrical shop with a tag that read 'Johnny's necktie,'"
apparently referring to Mattice's middle name. Id.

For his part, plaintiff took a photograph of the noose on his cell phone and showed it to
Saprina Wade ("Wade"), the plant labor relations representative.  He also reported the incident to
Rockwell, who along with Wade, conducted interviews of both Salagean and Rozewski later that
same day. Def. Exh 1 at 130-131; Exh. 3 at 2.  During his interview, Rozewski admitted to
knotting the rope in the form of a noose, but denied that his intentions were racially motivated.
Id.  Instead, Rozewski claimed that he was merely "trying to show other employees how [to tie]
a deer when hunting." Def. Exh. 3 at 2.  Despite his protestations of benignity, defendant's
representatives suspended him pending further investigation. Id.

Meanwhile, Rockwell and Wade continued their investigation and interviewed plaintiff

the following week. Id. at 3.  Plaintiff alleged that Rozewski "had previously made inappropriate comments" to him, although he could not specifically recall what Rozewski had said.  Id. Plaintiff further conveyed that he felt threatened on the shop floor because he could no longer work with Rozewski's colleagues who, according to plaintiff, had obviously tolerated his behavior. Def. Exh. 1 at 169; Exh. 3 at 3.  The following week, Rockwell and Wade interviewed plaintiff a second time as well, with the union's civil rights chairperson, Mark Sampson, in attendance. Def. Exh. 3 at 3.  Thereafter, plaintiff decided to take sick leave beginning in late November and did not return until mid-January of 2011. Def. Exh. 6 at 2.   In the interim, defendant unconditionally terminated Rozewski's employment effective December 6, 2010 and the shop steward informed plaintiff of the termination two days later. Def. Exh. 1 at 167; Exh. 3 at 4.

Even without Rozewski's presence on the shop floor, plaintiff declined to return to his part-time position as an electrician because he feared reprisals from Rozewski's colleagues. Def. Exh. 1 at 180.  Within weeks of returning to work, plaintiff allegedly observed graffiti in the men's bathroom depicting a caricature of a black male and reported the incident to defendant's labor representatives. Id. at 189.  In response, plaintiff acknowledged that defendant's representatives immediately ordered the image removed.  As he stated during his deposition, "I turned it into labor.  As a matter of fact, I didn't get - by the time I took the picture [of the graffiti], and stuff, the labor [representatives] and them had the painters going around trying to, you know, scratch it off." Def. Exh. A. at 220.  Moreover, plaintiff admitted that he initially discovered the image only after one of defendant's representatives informed him of it. Id.   On the other hand, Wade and defendant's labor relations manager, Jeff Smith, both attested that

-4-

plaintiff "never complained. . . about any type of graffiti, including any graffiti that was racially motivated." Def. Exh. 6 at 2; see Def. Exh. 3 at 2.

Following the graffiti episode, plaintiff once again took a leave of absence in March 2011 and returned to work later that July as a full-time attendance counselor. Def. Exh. 1 at 186; Exh. 6 at 2. On July 7, 2011, at meeting between plaintiff and several of defendant's labor representatives, plaintiff requested permission to work overtime as an attendance counselor, reiterating his concern that he would face retribution for Rozewski's dismissal if he returned to the shop floor. Def. Exh. 6 at 2. Defendant's representatives eventually denied the request on the ground that the union's collective bargaining agreement specifically prohibited attendance counselors from working overtime. Id.; Def. Exh. 1 at 95, 187. While the denial of his overtime request appears to form the backbone of plaintiff's discrimination claim, plaintiff does not allege that he suffered from discrimination or harassment since returning to work on July 1, 2011. Def. Exh. 1 at 191. Nor does plaintiff point to any instance where defendant permitted an attendance counselor to work overtime. Id. at 200. Although it is unclear from the record, plaintiff apparently filed a complaint with the United States Equal Employment Opportunity Commission, and received a right to sue letter, before commencing this action on January 26, 2012. Compl. at 4.

In its motion for summary judgement, defendant argues that plaintiff fails to support his Title VII race discrimination claim with any evidence that he suffered an adverse employment action. Insomuch as plaintiff maintains that defendant engaged in an adverse employment action when it denied his request to work overtime as an attendance counselor, defendant contends that it legitimately denied the request pursuant to the union's the collective bargaining agreement.

-5-

Defendant also asserts that plaintiff's state law claims are barred by the limitations provision contained in plaintiff's employment application.  In any event, defendant urges the Court to dismiss plaintiff's ELCRA hostile work environment claim because it took appropriate remedial measures after receiving notice of the offending conduct.  Furthermore, defendant argues that Michigan law does not recognize causes of action for either intentional infliction of emotion distress or negligent supervision.  Defendant maintains that the exclusive remedy provision of the Worker's Disability Compensation Act bars both of these claims anyway.  With respect to plaintiff's action for intentional infliction of emotional distress, defendant contends that plaintiff failed to raise a triable issue of fact as to whether its employees subjected him to "extreme and outrageous" conduct.

Plaintiff counters that he sufficiently demonstrated a colorable hostile work environment claim and that defendant's "corrective action[s]" did not sufficiently ameliorate the underlying conduct of its employees.[1]  Plaintiff argues that the limitations provision contained in his employment application is void as against public policy and that he did not knowingly and voluntarily waive "his right to the statutorily proscribed statute of limitations."  Plaintiff also questions whether the employment application formed a valid contract supported by adequate consideration.  Plaintiff contends that Michigan law recognizes causes of action for both

---

[1] As defendant correctly noted in its reply brief, "[p]laintiff's complaint asserts a race discrimination claim under Title VII and a hostile work environment claim under ELCRA. (Pl.'s Compl. at 4-5.)  Plaintiff's [response] brief, however, addresses a hostile work environment action under both statutes." Def. Reply Br. at 1 n.1.  Consequently, the Court declines to address any hostile work environment claim brought pursuant to Title VII because plaintiff improperly raised the issue for the first time in his opposition papers. See Desparois v. Perrysburg Exempted Village Sch. Dist., 455 F. App'x 659, 666 (6th Cir. 2012); Bridgeport Music, Inc. v. WB Music Corp., 508 F.3d 394, 400 (6th Cir. 2007).

intentional infliction of emotional distress and negligent supervision.  Finally, plaintiff asserts

that the Court should sustain his claim for intentional infliction of emotional distress because

defendant's employees exhibited "extreme and outrageous" behavior.

## II.   <u>Standard of Review</u>

Summary judgment is proper where there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law.  In considering a motion for summary

judgment, the Court will construe all facts in a light most favorable to the non-moving party.

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).  There are no genuine

issues of material fact when "the record taken as a whole could not lead a rational trier of fact to

find for the nonmoving party."  <u>Id.</u>  If the movant carries its burden of showing an absence of

evidence to support a claim, then the nonmovant must demonstrate by affidavits, depositions,

answers to interrogatories and admissions that a genuine issue of material fact exists.  <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317, 324-325 (1986).

## III.   <u>Analysis</u>

Upon reviewing the record, the Court concludes that plaintiff's Title VII race

discrimination claim is without merit.  The Sixth Circuit Court of Appeals has explained the

applicable legal standards under Title VII as follows:

> "[A plaintiff] may prove his claims [of race discrimination] through either
> direct evidence of discrimination, or through the *McDonnell Douglas* burden
> shifting analysis. <u>Talley v. Bravo Pitino Restaurant</u>, 61 F.3d 1241, 1248-49 (6th
> Cir. 1995).  Direct evidence is evidence that proves the existence of a fact without
> any inferences. <u>Rowan v. Lockheed Martin Energy Systems, Inc.</u>, 360 F.3d 544,
> 548 (6th Cir. 2004).
>
> In lieu of direct evidence of discrimination, the *McDonnell Douglas*
> framework employs a burden shifting analysis. The plaintiff is required to
> establish a prima facie case of discrimination at the outset. <u>McDonnell Douglas</u>

Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L. Ed. 2d 668 (1973). 'The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for the alleged discriminatory action, Id. 'If the employer carries this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. The ultimate burden of persuasion remains at all times with the plaintiff.' Newman v. Fed. Ex. Corp., 266 F.3d 401, 405 (6th Cir. 2001)(citations and internal quotation marks omitted).

To establish a prima facie case of discrimination, a plaintiff must show that he (1) is a member of a protected class, (2) was qualified for his position, (3) suffered an adverse employment decision, and (4) was treated differently than similarly situated, non-protected employees. See id.; see also McDonnell Douglas, 411 U.S. at 802. If the plaintiff is able to make a prima facie showing of discrimination, he 'in effect creates a presumption that the employer unlawfully discriminated against the employee.' St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)(citation omitted). In that case, the burden of producing evidence of a legitimate, nondiscriminatory reason for the adverse decision falls on the defendant employer. See id. at 506-07. This is merely a production burden, not a persuasion burden. See id. at 507.

If, however, the defendant proffers such a justification, while an inference of discrimination may still be drawn from the plaintiff's prima facie evidence, the mandatory presumption of discrimination drops from the case. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255, n.10, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). It then falls on the plaintiff to rebut the defendant's proffered justification. To raise a genuine issue of material fact about the credibility of his employer's explanation, the plaintiff is required to produce evidence from which a reasonable jury could infer that the defendant's legitimate, non-discriminatory reason is pretextual. See Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994)."

Williams v. Tyco Elec. Corp., 161 F. App'x 526, 531-532 (6th Cir. 2006) (footnote omitted).

An adverse employment action is a "materially adverse change in the terms and conditions of [plaintiff's] employment." EEOC v. SunDance Rehab. Corp., 466 F.3d 490, 501 (6th Cir. 2006) quoting  Smith v. City of Salem, 378 F.3d 566, 575 (6th Cir. 2004).  "Examples of adverse employment actions include firing, failure to promote, reassignment with significantly lower responsibilities,  a material loss of benefits, suspensions, and other indices unique to a particular

-8-

situation." Id. at 501-502 *quoting* Smith, 378 F.3d at 575-576.

In this case, plaintiff failed to proffer sufficient evidence that he suffered an adverse employment action.  After relating the details of the noose incident to the relevant authorities within defendant's labor relations department, defendant did not reassign plaintiff to another position, demote him or terminate his employment.  Additionally, the record is devoid of any indication that defendant objected to plaintiff's refusal to work on the shop floor because he feared retribution from Rozewski's colleagues, or that defendant attempted to forestall his placement as a full-time attendance counselor upon returning from a leave of absence in July 2011.

To the extent plaintiff asserts that defendant's denial of his overtime request constitutes an adverse employment action, his contention is belied by the fact that the union's collective bargaining agreement specifically prohibits attendance counselors from working overtime. See Drew v. Illinois Dep't of Human Servs., 101 F. App'x 637, 639 (7th Cir. 2004) (an adverse employment action does not include an employer's denial of plaintiff's request for overtime where such determinations are "purely discretionary under the relevant collective bargaining agreement."); Damon v. UPS, No. 04-0746S, 2010 U.S. Dist. LEXIS 116634, at *19 (W.D.N.Y. Nov. 2, 2010) (a denial of overtime will not amount to an adverse employment action when "overtime hours" are "not guaranteed to [plaintiff] under the CBA.").  And plaintiff could not identify any other attendance counselors whom defendant permitted to work overtime. Def. Exh. 1 at 200.

In regards to plaintiff's state law claims, they are barred by the six-month limitations provision contained in his application for employment since plaintiff filed suit on January 26,

-9-

2012 and neither party disputes that the noose incident transpired in November 2010. See

Steward v. New Chrysler, 415 F. App'x 632, 638-639 (6th Cir. 2011); Thurman v.

DaimlerChrysler, 397 F.3d 352, 357-359 (6th Cir. 2004).  Similarly, the latest point at which

plaintiff could have recognized the bathroom graffiti was the day before he went out on his

second leave of absence on March 27, 2011, almost ten months before plaintiff commenced this

action.  Most importantly, plaintiff acknowledged that he did not experience any incidents of

either discrimination or harassment since July 1, 2011.

Plaintiff attempts to skirt the limitations clause on the ground that it is void because he

did not sign the employment application knowingly, intelligently, and voluntarily.  This

contention is unavailing as the terms of the provision are "clear and unambiguous." Thurman,

397 F.3d at 358.  Nor is the clause void as a matter of public policy because its terms are

reasonable. Id. citing Myers v. Western-Southern Life Ins. Co., 849 F.2d 259, 262 (6th Cir.

1988).

In light of the foregoing, the Court need not address the merits of plaintiff's state law

claims.

Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is granted.


Dated: February 15, 2013                      s/ Bernard A. Friedman
                                              BERNARD A. FRIEDMAN
                                              SENIOR UNITED STATES DISTRICT JUDGE

12-10355 Yeargin v. Chrysler Group, LLC

I hereby certify that a copy of the foregoing document was sent to parties of record on February 15, 2013, electronically or by U.S. mail.

s/Michael Williams
Relief Case Manager for the Honorable
Bernard A. Friedman